Merrimack
No. 94-294

PENRICH, INC.

v.

EVELYN P. SULLIVAN & a.

December 29, 1995

*Nixon, Raiche, Brown, Manning & Branch, P.A.*, of Manchester (*B.J. Branch* on the brief and orally), for the plaintiff.

*Law Office of Donald R. Routhier*, of Somersworth (*Donald R. Routhier* on the brief and orally), for the defendants.

THAYER, J. The defendants appeal an order of the Superior Court (*Manias*, J.) declaring unlawful their withholding of rent from the plaintiff, Penrich, Inc. (Penrich), absent a court order. Penrich cross-appeals the superior court's finding that RSA chapter 205-A, regulating manufactured housing parks, does not preempt application of RSA 540:13-d (Supp. 1994) to tenants of a manufactured housing park. We affirm in part, reverse in part, and remand for further proceedings.

Penrich is the owner of Bear Brook Villa, a manufactured housing park (the park) located in Allenstown. The defendants are members of the board of directors of the Bear Brook Villa Tenants' Association (tenants' association). In January 1989, Penrich informed the tenants of the park that the monthly rental fee would be increased effective April 1, 1989. On March 22, 1989, the tenants' association informed Penrich that certain tenants in the park would be withholding the rental increase because of alleged health and safety violations. These tenants began depositing the amount of the increase in an escrow account in the tenants' association's name.

Penrich filed a petition for declaratory judgment to determine whether the unilateral withholding of rent was lawful. The tenants' association counterclaimed, alleging that electrical violations and septic system failures constituted a health and safety hazard and requesting relief. After an initial hearing, the Superior Court (*Manias*, J.) ordered all requests for temporary relief "stayed pending a determination [by the court] pursuant to RSA 205-A:15." From December 11 to December 15, 1989, the Superior Court (*Flynn*, J.) heard evidence on the alleged health and safety violations. Thereafter, on July 31, 1991, the court issued an opinion (the 1991 order) ordering Penrich to investigate or perform remedial work on all electrical and septic systems in the park and authorizing the continued withholding of the rental increase pending further order of the court.

In *Penrich, Inc. v. Sullivan*, 136 N.H. 621, 620 A.2d 1037 (1993) (*Penrich I*), we reversed in part the superior court's order because evidence of alleged violations had been admitted without establishing that prior notice of the problems had been given to Penrich as required by RSA 205-A:15 (1989). *Penrich I*, 136 N.H. at 623, 620 A.2d at 1039. We affirmed the superior court's order, however, with respect to lots 5, 6, 10, 117, 125, 128, 142, 166, 176, 181, and 196 (the eleven lots). *Id.* at 624, 620 A.2d at 1039. In addition, we specifically remanded the question of "whether tenants of a manufactured housing park are permitted to unilaterally withhold payment of rent without a court order authorizing such action." *Id.*

On remand, the Superior Court (*Manias*, J.) granted Penrich's motion for summary judgment on the petition for declaratory judgment and declared that "the defendants' actions in withholding rent absent court order under RSA 205-A:17 or 540:13-d were unlawful. Plaintiff may henceforth commence eviction proceedings for nonpayment of rent, to the extent authorized by law, and according to the procedural requirements of RSA ch. 205-A and ch. 540." On appeal, the defendants raise several arguments to support their contention that the superior court erred as a matter of law in declaring unlawful the unilateral withholding of rent. We address only those arguments that have merit. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

■ The defendants argue that the superior court erred insofar as its order applies to the eleven lots for which we specifically affirmed the 1991 order in *Penrich I*. We agree. The 1991 order authorized the continued withholding of the rental increase by members of the tenants' association and enjoined Penrich from evicting any members so withholding. In *Penrich I*, we stated that,

given the unusual procedural history of the case, "it would be inappropriate to require the tenants to relitigate their complaints concerning [the eleven lots], upon which the trial court has already made findings and issued its order thereon," despite the fact that not all of the procedural requirements of RSA chapter 205-A had been complied with. *Penrich I*, 136 N.H. at 624, 620 A.2d at 1039. We therefore affirmed the 1991 order with respect to these eleven lots.

The effect of this affirmance is straightforward. Each of the eleven lots involved complaints of septic system failures. Penrich therefore remains under an obligation to comply with section B of the 1991 order, addressing the park's septic systems, but only as it applies to the eleven lots. Furthermore, Penrich remains prohibited by section C of the 1991 order from bringing an action for possession against any members of the tenants' association residing on these eleven lots who have withheld the rental increase as authorized by section C. To the extent provided in this paragraph, we reverse the superior court's order and remand for further proceedings.

Penrich disputes this result on three grounds. First, Penrich suggests that our decision in *Penrich I* remanded the question of the permissibility of rent withholding absent a court order with regard to *all* tenants in the park withholding the rental increase. This interpretation misconstrues our earlier holding. We specifically stated that "it would be inappropriate to require the tenants to relitigate their complaints concerning [the eleven lots]." *Id.* The effect of accepting Penrich's argument would be to require these tenants to relitigate their complaints as an affirmative defense under RSA 540:13-d, a result we rejected in *Penrich I*.

Penrich also contends that, in ruling that the rent withholding absent a court order was unlawful, the superior court was merely revisiting the 1991 order as permitted by section C of that order, which authorized the continued withholding of the rental increase "until further order of the Court." Again, this argument would subject the tenants in the eleven lots to relitigation of their complaints in an action for possession, which we have already declined to do.

Finally, Penrich argues that the 1991 order made no specific finding that health and safety hazards existed on the eleven lots and that therefore this court essentially affirmed a nullity in *Penrich I*. The 1991 order states that "[t]he Park has a history of septic system failures and septic systems have not been operated and maintained by the plaintiff in a manner reasonably required to avert health hazards to the tenants." Although the superior court did not explicitly state that a health and safety hazard currently existed, we

think the language sufficiently clear to establish that the court made the requisite finding for the eleven lots under RSA 205-A:17 (1989). Furthermore, "in the absence of specific findings, the trial court is presumed to have made all findings necessary to support its decree." *Lepage v. L'Heureux*, 119 N.H. 201, 202, 399 A.2d 977, 978 (1979).

■ With regard to the remaining tenants withholding the rental increase (the remaining tenants), we affirm the superior court's ruling of law that the lack of a court order authorizing the withholding of rent subjects these tenants to the possibility of an action for possession. We remand on the limited issue, however, of whether an oral stipulation entered into by the parties at the inception of the case prevents Penrich from initiating eviction proceedings against the remaining tenants during the pendency of the litigation involving the eleven lots. We address first the question of law.

■ Neither the implied warranty of habitability that we recognized in *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248 (1971), nor the statutory language of RSA chapter 205-A or RSA 540:13-d, immunizes a manufactured housing park tenant who withholds rent without a court order from an action for possession. In *Kline*, we held that a tenant can obtain relief from a breach of the implied warranty of habitability by "instituting an action for breach of warranty or by offsetting his damages against a claim made against him by the landlord." *Kline v. Burns*, 111 N.H. at 93, 276 A.2d at 252. We have never held that a landlord is prevented from bringing an action for possession against a tenant who unilaterally withholds rent simply because the tenant alleges a breach of the implied warranty of habitability, and we decline to do so today.

■■ The remaining tenants fare no better under RSA chapter 205-A or RSA 540:13-d. RSA 205-A:15 and :17 establish a procedure by which tenants of a manufactured housing park may bring a petition alleging health and safety hazards and which provides that the court may, if it finds that such conditions exist, authorize the withholding of rent until the conditions have been abated. The statute plainly makes no allowance for rent withholding absent a court order. RSA 540:13-d is similarly of no avail. This statute provides that a tenant may avoid an action for possession based on non-payment of rent by proving that the rented or leased premises are in substantial violation of health and safety standards and by complying with certain procedural requirements. The statute thus provides an affirmative defense to an action for possession based on

non-payment of rent but does not offer any mechanism by which a tenant withholding rent can prevent a landlord from initiating such an action.

It follows from this discussion that tenants of a manufactured housing park who unilaterally withhold rent absent a court order may be subject to an action for possession. On appeal, the defendants do not dispute the general validity of this conclusion. Rather, they argue that Penrich is prevented by the particular circumstances of this case from bringing an action for possession against the remaining tenants. We will address their arguments in turn.

■ The defendants first point to the fact that Penrich never appealed section C of the 1991 order, which authorized continued withholding of the rental increase by members of the tenants' association. We think this section cannot be read in isolation from sections A and B, which we reversed with respect to the remaining tenants in *Penrich I*. Section C authorizes continued withholding "[a]s security for the performance of the within orders." This section is therefore contingent on the plaintiff's obligations under sections A and B. Because sections A and B were reversed with respect to the remaining tenants, section C no longer authorizes these tenants to withhold the rental increase.

■ The defendants suggest that the withholding by the remaining tenants is nonetheless justified by this court's affirmance of the superior court's findings with respect to the eleven lots. In effect, the defendants ask us to construe RSA 205-A:17 so that the court may authorize withholding of rent by tenants who have not been shown to be affected by health and safety conditions pursuant to the procedural requirements of the statute, if a finding of health and safety hazards has been properly made for other tenants in the park. We reject this construction of the statute.

■ ■ In determining the meaning of the statute, we examine the statutory language itself and construe the law consistently with its plain meaning. *Town of Tilton v. State*, 137 N.H. 463, 465, 629 A.2d 791, 793 (1993). In *Penrich I*, we noted that RSA 205-A:15 specifically requires "that the owner of the park receive fourteen days' notice of the violations that form the grounds for the petition." *Penrich I*, 136 N.H. at 623, 620 A.2d at 1038-39. RSA 205-A:17, II provides that the court may "[a]uthorize the tenants in the manufactured housing park who are affected by the unhealthy or unsafe conditions to withhold payment of their rent until such time as the threat to their health and safety has been abated." The construction most consistent with the language of the statute is that the health

and safety conditions which justify the withholding of rent under RSA 205-A:17 must be the subject matter of a petition that meets the procedural requirements of RSA 205-A:15, including the notice requirement. Because we reversed the 1991 order with respect to the remaining tenants based on the absence of any proof of the required notice, there is no finding of "unhealthy or unsafe conditions" affecting these tenants to justify their withholding of rent.

 The defendants next argue that the plaintiff is barred by the doctrine of collateral estoppel from relitigating the issue of whether the rent withholding was justified. They arrive at this conclusion by regarding the plaintiff's petition for declaratory judgment as a separate action from their counterclaim to that petition, which, as this court acknowledged in *Penrich I*, was incorrectly treated by the superior court as a petition under RSA 205-A:15. We do not need to resolve the question of whether the petition for declaratory judgment and the counterclaim should be considered parts of the same litigation or separate actions. Our decision reversing and remanding the 1991 order with regard to the remaining tenants means that the issue of whether health and safety conditions affecting these tenants have been found to exist pursuant to RSA chapter 205-A has not been finally resolved on the merits in favor of the defendants. Collateral estoppel thus does not apply. *See Daigle v. City of Portsmouth*, 129 N.H. 561, 570, 534 A.2d 689, 693 (1987).

The defendants also contend that the superior court should have declined to exercise its equity jurisdiction in granting the petition for declaratory judgment because the plaintiff had an adequate remedy at law. The defendants first raised this objection in their motion to reconsider the decision of the superior court, more than four years after Penrich filed the petition for declaratory judgment and after this court first reviewed the case in *Penrich I*. We have long recognized the principle that "issues [should] be raised at the earliest possible time, because trial forums should have a full opportunity to come to sound conclusions and to correct errors in the first instance." *Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 328, 480 A.2d 149, 153 (1984). "[T]he rationale behind the rule is that trial forums should have an opportunity to rule on issues and to correct errors before they are presented to the appellate court." *State v. Tselios*, 134 N.H. 405, 407, 593 A.2d 243, 245 (1991). The defendants state that they failed to raise this claim earlier in the proceedings before the case initially came before this court "[o]ut of concern that the plaintiff would somehow initiate eviction proceedings." Having made this tactical decision, the defendants cannot now raise the issue at this late stage.

591

Finally, the defendants contend that the parties entered into an oral stipulation in Judge Flynn's chambers at the inception of the case that prevents Penrich from bringing eviction proceedings against any of the tenants participating in the rent withholding action until the case has been finally concluded. The existence and scope of this stipulation, they argue, present a genuine issue of material fact rendering inappropriate the superior court's granting of Penrich's motion for summary judgment on the petition for declaratory judgment. Summary judgment should be granted only when the trial court "finds no genuine issue of material fact, taking the affidavits and any other evidence on file most favorable to the party opposing the motion." *ERA Pat Demarais Assoc's v. Alex. Eastman Found.*, 129 N.H. 89, 92, 523 A.2d 74, 76 (1986).

The defendants raised this issue in their objection to Penrich's motion for summary judgment, which is supported by an affidavit by defendant Evelyn Sullivan, and later in their motion to reconsider the court's granting of the motion for summary judgment. Penrich acknowledged the existence of an agreement not to evict in its motion for summary judgment and in its response to the defendants' objection to the motion for summary judgment, as well as in its briefs, but argues that the agreement is no longer binding because the declaratory judgment action was finally concluded by the decision of the superior court. We hold that the scope of the oral stipulation not to evict presents a genuine issue of material fact, and we remand this limited issue to the superior court for a determination of the scope of the stipulation and whether it is still binding on Penrich with regard to the remaining tenants.

On cross-appeal, Penrich argues that the superior court erred in ruling that RSA chapter 205-A does not bar tenants in a manufactured housing park from availing themselves of the protections of RSA 540:13-d. RSA 205-A:9 (1989) states that "[t]he provisions of RSA 540 shall apply to tenancies in manufactured housing parks except where such application would produce a result inconsistent with or contrary to the provisions of this chapter." Penrich asserts that the petition procedure created by RSA 205-A:15 for residents of manufactured housing parks is inconsistent with the affirmative defense to an action for possession for non-payment available to tenants in general under RSA 540:13-d. We disagree.

An RSA 205-A:15 petition provides a manufactured housing park tenant with an opportunity to obtain a court order under RSA 205-A:17 allowing the withholding of rent pending the abatement of health and safety hazards. A tenant so withholding is not subject to eviction for non-payment of rent. RSA 540:13-d, in contrast, pro-

vides an affirmative defense to an action for possession based on non-payment of rent to a tenant who proves by clear and convincing evidence the existence of violations of health and safety standards and otherwise complies with the statute. If the tenant fails to carry the burden of proof or establish compliance, the action for possession may be maintained.

We hold that the petition procedure under RSA chapter 205-A is not inconsistent with RSA 540:13-d and does not preempt the application of RSA 540:13-d to tenants of a manufactured housing park. A manufactured housing park tenant who withholds rent absent a court order under RSA 205-A:17 may plead health and safety violations as an affirmative defense under RSA 540:13-d in an action for possession based on non-payment of rent.

*Affirmed in part; reversed in part; remanded.*

BRODERICK, J., did not sit; the others concurred.